No. 23-4169

_____
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

JESSICA BATES,

    Plaintiff-Appellant,

       v.

Director FARIBORZ PAKSERESHT, et al.,

    Defendants-Appellees.

_____

APPELLEES' SUPPLEMENTAL BRIEF

_____

Appeal from the United States District Court
for the District of Oregon

_____

DAN RAYFIELD,
Attorney General
BENJAMIN GUTMAN
Interim Deputy Attorney General
PHILIP THOENNES
Senior Assistant Attorney General
1162 Court St. NE
Salem, Oregon 97301-4096
Telephone: (503) 378-4402
philip.thoennes@doj.oregon.gov

Attorneys for Appellees

_____
_____

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................2

    A.    ODHS recognizes that familial acceptance and support are critical to a child's well-being and thus asks prospective resource families and adoptive resources to accept and support a child's identity. ...............................................................2

    B.    ODHS denied plaintiff's application, plaintiff sought a preliminary injunction in federal court, and the district court denied the motion. ............................................................3

    C.    This Court concluded that the district court erred in denying plaintiff's motion for a preliminary injunction because the law was likely unconstitutional as applied to plaintiff. ....................5

ARGUMENT .........................................................................................................6

    A.    The majority's free exercise analysis conflicts with this Court's precedent. ...............................................................................6

    B.    The majority failed to observe the constitutionally significant distinction between resource families and parents. ....................................................................................10

    C.    The majority suggested impracticable or impossible alternatives. ..................................................................................12

CONCLUSION....................................................................................................13

# TABLE OF AUTHORITIES

## Cases Cited

*Backlund v. Barnhart*,
    778 F.2d 1386 (9th Cir. 1985) .................................................................. 11

*Blais v. Hunter*,
    493 F. Supp. 3d 984 (E.D. Wash. 2020) ..................................................... 7

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993) ..................................................................................... 7

*Employment Div. v. Smith*,
    494 U.S. 872 (1990) ..................................................................................... 6

*Mahmoud v. Taylor*,
    145 S. Ct. 2332 (2025) ............................................................................... 10

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*,
    584 U.S. 617 (2018) ................................................................................ 6, 8

*Olympus Spa v. Armstrong*,
    138 F.4th 1204 (2025) ................................................................................ 10

*Reynolds v. United States*,
    98 U.S. 145 (1878) ....................................................................................... 9

*Smith v. Org. of Foster Families*,
    431 U.S. 816 (1977) ................................................................................... 10

*Stormans, Inc. v. Wiesman*,
    794 F.3d 1064 (9th Cir. 2015) ................................................................. 7, 8

*West Virginia Bd. of Ed. v. Barnette*,
    319 U.S. 624 (1943) ................................................................................... 11

## Constitutional & Statutory Provisions

Or. Rev. Stat. § 418.630 ..................................................................................... 2

U.S. Const., Amend. I ................................................................................... 4, 6

## Administrative Rules

Or. Admin. R. § 413-200-0308(2)(k) ............................................ 3, 5, 7, 9, 11

## APPELLEES' SUPPLEMENTAL BRIEF
_____

## INTRODUCTION

In this interlocutory appeal, a divided panel concluded that an Oregon Department of Human Services (ODHS) rule likely violated the Free Speech and Free Exercise Clauses, as applied to plaintiff. As explained below, the majority opinion contains significant legal and factual mistakes. Nonetheless, ODHS did not seek rehearing en banc, because the decision highlighted some ways that the agency can improve its communication with stakeholders, and the agency is focused on clarifying its rules to enhance the process.

The rule at issue in this case embodies a value that is critical to the mission of ODHS: ensuring that anyone who cares for a child in the state's legal custody understands the importance of familial acceptance and support to the health and well-being of that child. The majority opinion mistook some training materials—designed to illustrate that critical value with examples—as rigid rules about the words that resource parents and adoptive resources can use. Even though those training materials were meant to be illustrative, ODHS looks forward to amending its rule and updating its training materials to better serve children, applicants, and Oregon's foster care process. Given that ongoing work and the interlocutory nature of this appeal, this case may not represent an optimal vehicle for en banc review.

2

But if this Court chooses to rehear this case en banc, it should correct several serious legal mistakes that could have repercussions for future cases. First, the majority's free exercise analysis directly conflicts with other decisions of this Court and finds no support in Supreme Court precedent. Second, the majority improperly discounted the fact that the children at issue in this case are children within the state's legal custody—that is, plaintiff has no parental rights vis-à-vis those children. Finally, some of the majority's suggested alternative measures are impracticable or impossible in a case in which the child will be adopted.

## BACKGROUND

**A.  ODHS recognizes that familial acceptance and support are critical to a child's well-being and thus asks prospective resource families and adoptive resources to accept and support a child's identity.**

ODHS has legal custody of all children within the state's foster care system. To care for a child in the state's legal custody, either as a resource family or adoptive resource, a person must obtain certification from ODHS. Or. Rev. Stat. § 418.630. There are many requirements for obtaining such certification, ranging from conditions of the home to responsibilities concerning a child's educational, medical, and social needs. Pertinent here, an applicant must demonstrate that they will:

> Respect, accept and support the race, ethnicity, cultural identities, national origin, immigration status, sexual

> orientation, gender identity, gender expression, disabilities, spiritual beliefs, and socioeconomic status, of a child or young adult in the care or custody of the Department, and provide opportunities to enhance the positive self-concept and understanding of the child or young adult's heritage[.]

Or. Admin. R. § 413-200-0308(2)(k).

### B. ODHS denied plaintiff's application, plaintiff sought a preliminary injunction in federal court, and the district court denied the motion.

Plaintiff applied for certification as an adoptive resource and was asked to complete the mandatory Resource and Adoptive Family Training course. (SER-4–5, Garcia Decl. ¶¶ 3, 5–6). Through that course plaintiff learned that ODHS requires resource families and adoptive resources to respect, accept, and support a child's identity, including a child's sexual orientation, gender identity, and gender expression. (3-ER-319, Bates Decl. ¶¶ 37–38). After completing the course plaintiff contacted an ODHS certifier, explaining that she could not use a child's preferred pronouns that did not correspond to their biological sex. (SER-5, Garcia Decl. ¶ 7). ODHS staff informed plaintiff that refusal to comply with Subsection (2)(k) would be grounds for denial of her application. (SER-6, Garcia Decl. ¶ 12). ODHS later informed plaintiff by letter that her application was denied, given her stated refusal to comply with Subsection (2)(k). (3-ER-343–44).

Plaintiff then filed suit in federal court, alleging that Or. Admin. R. § 413-200-0308(2)(k), on its face and applied to her, violated her First

4

Amendment rights to free speech and free exercise of religion, among other things. (3-ER-383–423, Verified Complaint, C.R. 1). Plaintiff also moved for preliminary injunctive relief and an order that would prevent the state from enforcing the rule in a way that would violate plaintiff's constitutional rights. (C.R. 14).

The district court (Nelson, J.) denied the motion for a preliminary injunction, concluding that plaintiff's First Amendment claims were unlikely to succeed on the merits. (1-ER-002–54, Opinion and Order, C.R. 47). The court first determined that plaintiff's free exercise claim was unlikely to succeed because the challenged rule was neutral, generally applicable, and imposed only an incidental burden on plaintiff's religious exercise. (1-ER-023). And the court determined that the rule was rationally related to the state's interest in protecting children in the state's legal custody, including LGBTQ+ children. (1-ER-024). Addressing plaintiff's free speech claim, the court agreed with plaintiff that the rule would compel her speech in some respects and would restrict her speech in other respects. (1-ER-028–31). Applying strict scrutiny, the court held that the rule was constitutional as applied to plaintiff because the state proved a compelling interest in ensuring the health, safety, and welfare of LGBTQ+ children in the state's legal care and the rule was narrowly tailored to advance that interest. (*See* 1-ER-032–40 (compelling interest), 1-ER-040–51

(narrow tailoring)). Plaintiff appealed from the denial of her motion for a preliminary injunction.

**C. This Court concluded that the district court erred in denying plaintiff's motion for a preliminary injunction because the law was likely unconstitutional as applied to plaintiff.**

A divided panel of this Court reversed. The majority (Bress, J., and Hawkins, S. J.) held that Subsection (2)(k) was likely unconstitutional as applied to plaintiff, on both free speech and free exercise grounds. The majority first determined that strict scrutiny applied to plaintiff's free speech claim, concluding that the challenged rule "restricts and compels speech based on both content and viewpoint." (Slip op. at 26). The majority next determined that strict scrutiny applied to plaintiff's free exercise claim, concluding that the challenged rule burdened plaintiff's religious exercise and was neither neutral nor generally applicable. (Slip op. at 36–51). Applying strict scrutiny, the majority assumed that the state had a compelling interest in protecting the health and well-being of LGBTQ+ foster children but concluded that the state failed to demonstrate that no less restrictive alternative measure would serve that interest. (Slip op. at 51–58).

The dissent (Clifton, S. J.) would have held that Subsection (2)(k), as applied to plaintiff, only incidentally burdened plaintiff's speech and survived intermediate scrutiny. (Slip op. at 71–87). As for plaintiff's free exercise

claim, the dissent would have held that the rule was content neutral and generally applicable and thus subject to rational basis review. (Slip op. at 87–98).

## ARGUMENT

Appellees did not seek panel rehearing or rehearing en banc and are actively working on clarifying its rules and training materials in light of the majority's opinion while also ensuring that all children within the state's legal custody are placed in safe and supportive homes. But if this Court votes to rehear this case en banc, three aspects of the majority's opinion call for reexamination.

**A.    The majority's free exercise analysis conflicts with this Court's precedent.**

The Free Exercise Clause provides that "Congress shall make no law * * * prohibiting the free exercise [of religion.]" U.S. Const. amend. I. The Free Exercise Clause prohibits government action that is "hostile to the religious beliefs of affected citizens and * * * that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices." *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 584 U.S. 617, 638 (2018). But "[t]he right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Employment Div. v. Smith*, 494 U.S. 872, 877 (1990).

As the foregoing suggests, the level of scrutiny that applies in a free exercise case depends on the nature of the law at issue. A neutral law of general applicability is subject to rational basis review. *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1075–76 (9th Cir. 2015). Under rational basis review, the court "must uphold the rules if they are rationally related to a legitimate governmental purpose." *Id.* at 1084. Strict scrutiny applies only to laws that burden religion and are not neutral or generally applicable. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993). Such laws are presumptively unconstitutional unless the government can show that the law serves "a compelling interest" and is "narrowly tailored to advance that interest." *Id.* at 533.

Here, the majority concluded that Or. Admin. R. § 413-200-0308(2)(k) burdens plaintiff's religious exercise and is neither neutral nor generally applicable. The majority's neutrality analysis is the most troubling and finds no support in this Court's case law—indeed, the majority's neutrality analysis directly conflicts with this Court's precedent. Drawing on a decision from the Eastern District of Washington (Mendoza, J.),[1] the majority acknowledged that the challenged rule is facially neutral toward religion but nevertheless

---

[1] *Blais v. Hunter*, 493 F. Supp. 3d 984 (E.D. Wash. 2020).

concluded that the rule is not neutral under the Free Exercise Clause because "Oregon's policy as a whole stands most obviously in opposition to more traditional understandings of sexuality and gender. And those more traditional understandings are often held by persons with religious viewpoints." (Slip op. at 44). In reaching that result, the majority asserted, without citation, that "Oregon's policy will overwhelmingly block those prospective parents who hold traditional religious views on sexuality and gender." *Id.*

The problem with that analysis is twofold. First, there is no evidence in the record that Oregon law disproportionately affects people "who hold traditional religious views on sexuality and gender" or, more importantly, that the state adopted its laws *because* they would disproportionately affect such people. *See Masterpiece Cakeshop*, 584 U.S. at 638 (the Free Exercise Clause prohibits government action that "passes judgment upon or presupposes the illegitimacy of religious beliefs or practices"). To the contrary, the record demonstrates that the state adopted its laws to help protect LGBTQ+ youth from familial rejection, regardless of whether such rejection is motivated by religious or secular convictions.

Second, the majority's de facto disparate-impact test for neutrality directly conflicts with this Court's precedent. In *Stormans*, this Court expressly rejected that formulation of non-neutrality. In upholding Washington rules

requiring pharmacies to deliver valid prescriptions, including emergency contraceptives, this Court explained that "[t]he possibility that pharmacies whose owners object to the distribution of emergency contraception for religious reasons may be burdened disproportionately does not undermine the rules' neutrality." 794 F.3d at 1077. Indeed, "[t]he Free Exercise Clause is not violated even if a particular group, motivated by religion, may be more likely to engage in the proscribed conduct." *Id.*

The majority's free exercise analysis is also in tension with longstanding Supreme Court precedent. In *Reynolds v. United States*, 98 U.S. 145, 166–67 (1878), a decision long before *Smith*, the Court upheld a ban on polygamy, even though polygamy was practiced primarily by members of the Mormon Church. But under the majority's analysis, the result of that case likely would have been different.

Thus, even if Subsection (2)(k) is more likely to burden prospective foster parents "who hold traditional religious views on sexuality and gender," that does not make the rule non-neutral. Instead, Subsection (2)(k) is neutral because it is both facially neutral and nothing in the rule's "historical background, precipitating events, or legislative history" undermines that facial neutrality by demonstrating that the state enacted its rule based on hostility to

Case: 23-4169, 10/14/2025, DktEntry: 100.1, Page 13 of 19

10

any given religious belief. *Olympus Spa v. Armstrong*, 138 F.4th 1204, 1218 (2025).

## B. The majority failed to observe the constitutionally significant distinction between resource families and parents.

This is not a case about the rights of parents to direct the religious upbringing of their children—it is undisputed that plaintiff has no parental rights with respect to any of the children in the state's legal custody. Although plaintiff intends to adopt a child, she applied to be a prospective adoptive resource, which would provide her the opportunity to house and care for children with whom she has no relationship as a parent or legal guardian. This is instead a case about the state's compelling interest in protecting all children who are in the state's legal custody and whether, and to what extent, the means chosen to achieve that end conflict with an individual's right to free speech and free exercise of religion. That distinction is critical. It is undisputed that parents have the constitutional right to direct the religious upbringing of their children, which entails a concomitant "limit[] on the government's ability to interfere with" that relationship. *Mahmoud v. Taylor*, 145 S. Ct. 2332, 2338 (2025). But a foster parent has no constitutionally significant parental rights with respect to children in the legal custody of the state, *Smith v. Org. of Foster Families*, 431 U.S. 816, 845 (1977) (so observing), which means plaintiff has no constitutional right to instruct a child who is in the care or custody of ODHS

in her own religious beliefs.  *See Backlund v. Barnhart*, 778 F.2d 1386, 1390 (9th Cir. 1985) (holding that foster parents failed to demonstrate a "clearly established right to exercise their religious beliefs about punishment on a foster child").

The majority failed to appreciate that distinction.  Throughout its opinion, the majority stated that Oregon's rule applied to "parents" or "adoptive parents" and referred to plaintiff as a prospective "adoptive parent."  (*E.g.*, Slip op. at 9, 14, 22, 24, 26–28, 30–31).  For example, the majority stated that "[a]n overarching thesis of Oregon's policy is that what a parent says to a child about sexual orientation and gender identity—and what kinds of messages a parent generally conveys on these topics in their daily interactions and homes—is central to respecting, accepting, and supporting adoptive children."  (Slip op. at 30).  That is incorrect.  Subsection (2)(k) has nothing to say about what a parent may teach their child about their religious beliefs or their views on sexual orientation and gender identity, and such a law would pose grave constitutional concerns.  *See, e.g.*, *West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624 (1943).  Rather, Subsection (2)(k) applies only to those people who ask to care for children in the state's legal custody, whether as a resource family or adoptive resource.  And, of course, once a person adopts a child, that child is no longer a

ward of the state and the adoptive parent has a constitutional right to direct the religious upbringing of that child.

C. **The majority suggested impracticable or impossible alternatives.**

In concluding that the challenged rule failed strict scrutiny, the majority stated that Oregon could adopt less restrictive means to achieve its interest in protecting the health and well-being of foster children in the state's legal custody. For example, the majority noted that the state "could first ensure that if a child identifies as LGBTQ or is raising questions about sexuality or gender identity, that child would not be placed with" plaintiff. (Slip op. at 53–54). But that approach would only work if the state knows that a child identifies as LGBTQ+. Children, of course, mature as they grow up, and a child may later disclose an identity around their sexual orientation or gender identity that does not align with plaintiff's religious beliefs. The majority also suggested that the state could impose a more rigorous system of "regular monitoring or check-ins for parents" and could, "in extreme situations," remove a child from a parent. (Slip op. at 54). But that approach, which may be more intrusive and potentially disruptive to a child's living situation, does not serve the state's interests as well as an up-front commitment from prospective caregivers to provide appropriate care. That is why the state asks all applicants, at the front

end, to respect, accept, and support the identity of all children in the state's legal custody.

## CONCLUSION

If this Court grants rehearing en banc, it should correct the legal and factual mistakes in the majority opinion.

Respectfully submitted,

DAN RAYFIELD
Attorney General
BENJAMIN GUTMAN
Interim Deputy Attorney General


/s/ Philip Thoennes
_____
PHILIP THOENNES
Senior Assistant Attorney General
philip.thoennes@doj.oregon.gov

Attorneys for Defendants-Appellees
Fariborz Pakseresht, et al.

PT4:bmg\1001827926

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a), Federal Rules of Appellate Procedure, I certify that the Appellees' Supplemental Brief is proportionately spaced, has a typeface of 14 points or more, and contains 2,702 words.

DATED: October 14, 2025

/s/ Philip Thoennes
PHILIP THOENNES
Senior Assistant Attorney General
philip.thoennes@doj.oregon.gov

Attorney for Defendants-Appellees
Fariborz Pakseresht, et al.

DAN RAYFIELD  #064790
Attorney General
BENJAMIN GUTMAN  #160599
Interim Deputy Attorney General
PHILIP THOENNES  #154355
Senior Assistant Attorney General
1162 Court St.
Salem, Oregon 97301
Telephone: (503) 378-4402

Counsel for Appellees

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| JESSICA BATES,<br><br>　　Plaintiff-Appellant,<br><br>　　v.<br><br>Director FARIBORZ PAKSERESHT, et al.,<br><br>　　Defendants-Appellees. | U.S.C.A. No. 23-4169<br><br>STATEMENT OF RELATED CASES |

Pursuant to Rule 28-2.6, Circuit Rules of the United States Court of Appeals for the Ninth Circuit, the undersigned, counsel of record for Appellees, certifies that he has no knowledge of any related cases pending in this court.

　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　DAN RAYFIELD
　　　　　　　　　　　　　　　　Attorney General
　　　　　　　　　　　　　　　　BENJAMIN GUTMAN
　　　　　　　　　　　　　　　　Interim Deputy Attorney General


　　　　　　　　　　　　　　　　/s/  Philip Thoennes
　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　PHILIP THOENNES
　　　　　　　　　　　　　　　　Senior Assistant Attorney General
　　　　　　　　　　　　　　　　philip.thoennes@doj.oregon.gov

　　　　　　　　　　　　　　　　Attorneys for Defendants-Appellees
　　　　　　　　　　　　　　　　Fariborz Pakseresht, et al.

# CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2025, I directed the Appellees' Supplemental Brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Philip Thoennes
PHILIP THOENNES
Senior Assistant Attorney General
philip.thoennes@doj.oregon.gov

Attorneys for Defendants-Appellees
Fariborz Pakseresht, et al.